IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-00618-WDM-BNB

RITA J. ERICKSON #124753,

Plaintiff,

v.

LIEUTENANT LEE NEWBERRY, Colorado Department of Corrections, and
NURSE PRACTIONER DEBBIE ANDERSON, Colorado Dept. of Corrections,

Defendants.
_____

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the defendants' **Motion to Dismiss** [Doc. # 20, filed 6/28/2007]. I respectfully RECOMMEND that the Motion to Dismiss be GRANTED.

## MATERIAL ALLEGATIONS OF THE COMPLAINT

The plaintiff has summarized the facts underlying her claims as follows:[1]

> On December 29, 2005, while the Plaintiff was working for the maintenance dept. at C.W.C.F Plaintiff was told by Defendant Newberry to climb into a large steel-mesh cart that had been emptied of trash except for two small bags that were out of reach While attempting to get into the cart, Plaintiff was putting her left leg over the gate of the cart when Defendant Newberry pushed the Plaintiff's left arm and jokingly said "go on and get inthere". This push caused the Plaintiff to fall headfirst into the cart from about two and a half feet above the carts bottom. Plaintiff was knocked unconscious for several minutes, and injured her head, neck and spinal cord. This injury was the direct result of "horseplay" by Defendant Newberry, which violate the administrative regulation number 1450-01, staff code of conduct and states "horseplay will

---

[1]The allegations of the Complaint are quoted verbatim. No effort is made to correct or to note errors.

> not be tolerated" . . . . Plaintiff was pulled out of the cart by the defendants, Lt. Newberry and Nurse Debbie Anderson. Plaintiff walked with help into the medical office, was given a motrin and an icepack and sent to her unit. NO EXAMINATION of any kind was conducted or given by Defendant Anderson. On December 30, 2005, after being seen through the window at medline Plaintiff was called back to the medical office and told by Defendant Anderson to take the medication that was crushed in a cup of water, it was for pain. Plaintiff swallowed the mixture and Defendant Anderson told the Plaintiff it would make her "sleepy" and possibly "dizzy Plaintiff asked Defendant Anderson what it was she had taken. Defendant Anderson replied "Tylenol 3, they have codeine in them" Plaintiff stated that she is allergic to codeine and Defendant Anderson said "Oh, I didn't think to look at your chart". Clearly written in large red letters on the front of the Plaintiffs chart is "ALLERGY Codeine".

Complaint [Doc. # 3] at pp. 3 and 4 of 19.

The complaint also alleges the following:

(1) The plaintiff was not given any kind of examination "until four days later when on January 2, 2006 she was taken to the medical office, fitted with a cervical collar and while waiting for the ambulance to arrive her vitals were taken." Id. at p. 4 of 19. The plaintiff was taken by ambulance to St. Thomas Moore hospital where a C.A.T. scan was administered and she was otherwise treated and medicated. Id.

(2) On January 3, 2006, a medical doctor "restricted the Plaintiff to very limited activities. These restrictions include no work, no stairs, no lifting, no bending, no stooping etc." Id. Although the plaintiff requested a transfer to a facility that could accommodate these restrictions, she was not transferred until September 11, 2006. In the interim, "Plaintiff was housed upstairs in unit 6 at C.W.C.F." Id.

(3) The plaintiff was scheduled for an M.R.I. to occur on February 9, 2006, "but the Plaintiff was denied this scheduled medical treatment due to a facility lockdown and despite the requests by the nursing staff to override this decision." Id. The plaintiff received the M.R.I. on February 28, 2006. Id.

(4) The plaintiff has been refused "a nuclear scan" of her brain despite the recommendation of a "therapist" that such a test be performed. Id. at p. 5 of 19. The plaintiff was examined by a neurosurgeon in August 2006. The neurosurgeon recommended that the plaintiff see a neurologist, but as of November 1, 2006, the plaintiff "is still waiting for the recommended appointments to be made. . . ." Id.

The plaintiff brings two claims. Claim One is against Newberry and alleges that she violated the administrative regulation prohibiting horseplay, resulting in the plaintiff's injuries. Id at p. 6 of 19. Claim Two is against Anderson and alleges deliberate indifference to the plaintiff's serious medical needs. [2]

The claims are brought pursuant to 42 U.S.C. § 1983.

## STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe her pleadings. Haines v. Kerner, 104 U.S. 519, 520-21 (1972). I cannot act as an advocate for a *pro se* litigant, however,

---

[2]The plaintiff also alleges in Claim Two, in conclusory fashion, violations of "Equal protection, Amendment II[;] Due Process, Amendment II[; and] Vested Rights, Amendment II." Complaint at p. 8 of 19. Without more, I cannot discern the nature of these claims, and I cannot address their merits. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based" and holding that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based").

who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, I must accept the plaintiff's well-pleaded allegations as true, and I must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scheuer, 468 U.S. 183 (1984).

## ANALYSIS

### 1. Official Capacity Claims

The complaint does not indicate whether the defendants are sued in their individual or official capacities. It is clear, however, that the plaintiff seeks both prospective injunctive relief "to meet her long over due medical needs," Complaint at p.16 of 19, and money damages. Id.

The defendants correctly note that they enjoy Eleventh Amendment sovereign immunity against suit for money damages based on claims against them in their official capacities. White v. State of Colorado, 82 F.3d 364, 366 (10th Cir. 1996). Accordingly, I respectfully RECOMMEND that the Motion to Dismiss be GRANTED and the complaint be dismissed insofar as it may be read to assert claims for money damages or declaratory relief against the defendants based on their actions taken in their official capacities.

4

## 2. Claim One

Claim One is brought only against Newberry and alleges personal injuries suffered by the plaintiff when "Newberry pushed the Plaintiff's left arm and jokingly said 'go on and get in [] there'." Complaint at p. 3 of 19. In addition, the complaint alleges that "[t]his injury was the direct result of 'horseplay' by Defendant Newberry, which violate the administrative regulation number 1450-01. . . ." Id.

The plaintiff has attached a copy of A.R. # 1450-01, which provides that "[h]orseplay between staff, or staff and offenders, is prohibited. Horseplay includes, but is not limited to: wrestling, pushing, chasing, or practical jokes." Complaint at p.7 of 19. I accept the plaintiff's factual allegations as true, and I assume that the conduct alleged constitutes a violation of the administrative regulation. I also assume, as did the defendants in their Motion to Dismiss, that the actions alleged constitute negligence by Newberry. Motion to Dismiss at p. 3.

"To state a valid cause of action under [42 U.S.C.] § 1983, a plaintiff must allege the deprivation by defendant of a right, privilege, or immunity secured by the Constitution and laws of the United States while the defendant was acting under color of state law." Garcia v. Lemaster, 439 F.3d 1215, 1217 (10th Cir. 2006). It is well-established, however, that "[a] failure to adhere to administrative regulations does not equate to a constitutional violation." Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993).

Similarly, even if Newberry was negligent in her conduct, no claim under § 1983 is stated. As the Tenth Circuit Court of Appeals noted in Sampley v. Ruettgers, 704 F.2d 491, 494 (10th Cir. 1983):

> Section 1983 creates a species of tort liability. It does so, however, only for deprivations, under color of state law, of federal statutory or constitutional rights; not all state law torts are constitutional violations for which section 1983 provides a remedy.

(Internal quotations and citations omitted.) "A prison guard's use of force against an inmate is cruel and unusual only if it involves the unnecessary and wanton infliction of pain." Id. The wanton infliction of pain requires "that the guard have intended to harm the inmate." Id. Allegations of negligence are not enough.

Here, the plaintiff alleges only that Newberry acted "jokingly" and was engaged in prohibited "horseplay" in violation of the administrative regulation. There is no allegation that Newberry intended to harm the plaintiff. Consequently, the plaintiff has failed to allege a violation of § 1983, and I respectfully RECOMMEND that Claim One be DISMISSED.

### 3. Claim Two

Claim Two is against Anderson only and alleges that she acted with deliberate indifference toward the plaintiff's serious medical needs in several respects, as follows:

(1) In pulling the plaintiff out of the steel-mesh cart without first immobilizing her and taking precautions based on the plaintiff's lack of consciousness and possible "head and/or spinal cord injury," Complaint at p. 8 of 19;

(2) In waiting four days to conduct any kind of examination of the plaintiff, id.;

(3) In giving the plaintiff codeine, to which she is allergic, id.; and

(4) In delaying medical treatment during a lockdown of the prison. Id.

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000). As the

circuit court has made clear:

> "Deliberate indifference" involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety.

(Internal quotations and citations omitted.) "[D]eliberate indifference entails something more than mere negligence." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Similarly, "[a] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." Roper v. Grayson, 81 F.3d 124, 125 (10thCir. 1996) (internal quotations and citations omitted).

Anderson's actions (1) in pulling the plaintiff out of the steel-mesh cart without first immobilizing her and (2) in administering medicine containing codeine without first checking the plaintiff's medical chart for allergies constitute mere negligence and are not actionable. The plaintiff has failed to allege that Anderson knew of and disregarded an excessive risk to the plaintiff. Farmer, 511 U.S. at 837. Moreover, Anderson's failure to perceive a risk does not state a claim for deliberate indifference. Id.

Similarly, the plaintiff's allegations that Anderson did not immediately examine her following the accident and waited four days to conduct an examination do not state a claim for deliberate indifference. First, the allegations are belied by other allegations of the complaint--that the plaintiff "walked with help into the medical office" immediately after the accident and "was given a motrin and an icepack and sent to her unit"; and that she was seen "through the window at

medline" on the day after the accident and given Tylenol 3 "crushed in a cup of water." Complaint at p. 3 of 19. In any event, a plaintiff's differences of opinion with the medical staff concerning the treatment given and the timing of that treatment do not support a claim of cruel and unusual punishment. Roper, 81 F.3d at 125; Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993).[3] And, "[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." Olson, 9 F.3d at 1477. The plaintiff has failed to allege that the four day delay in being examined resulted in any substantial harm to her.

Similarly, the plaintiff has failed to allege any harm resulting from the delay in receiving an M.R.I.--from February 9, 2006, to February 28, 2006, during a facility lock down.

The plaintiff also alleges that on January 3, 2006, she was restricted by a medical doctor from using stairs; that she requested a transfer to a facility that could accommodate the restriction; that the transfer did not occur until September 11, 2006; and that in the meantime she was "housed upstairs in unit 6 at C.W.C.F." Complaint at p. 4 of 19. The plaintiff does not allege that Anderson was responsible for the delay in the transfer or played any part whatsoever in the transfer. An individual cannot be held liable under § 1983 unless she caused or

---

[3]Although not discussed in Claim Two, I am aware of the plaintiffs' allegations in the Nature of the Case portion of the complaint that she has been refused "a nuclear scan" of her brain despite the recommendation of a "therapist" that such a test be performed, Complaint at p. 5 of 19; and that she has not been seen by a neurologist despite the recommendation of a neurosurgeon in August 2006. Id. These allegations, taken as true, also demonstrate "[a] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives" and do not support a claim of cruel and unusual punishment. Roper, 81 F.3d at 125; Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993).

participated in the alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983).

The plaintiff has failed to allege a valid claim for deliberate indifference to a serious medical need. I respectfully RECOMMEND that Claim Two be DISMISSED.

## 4. Qualified Immunity

Defendants also move to dismiss the Complaint on the basis of qualified immunity. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

When analyzing the issue of qualified immunity, a court must first determine whether the plaintiff has sufficiently alleged the violation of a statutory or constitutional right. Only if the plaintiff has asserted such a violation does the court inquire whether the right was clearly established at the time of the alleged violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999). Because I have determined that the plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted, I do not address the defense of qualified immunity further.

## CONCLUSION

I respectfully RECOMMEND that the Motion to Dismiss be GRANTED and that the Complaint and this action be DISMISSED WITH PREJUDICE.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific,

written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated March 3, 2008.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge