IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-00618-WDM-BNB

RITA J. ERICKSON,

    Plaintiff,

v.

LIEUTENANT LEE NEWBERRY, and
NURSE PRACTITIONER DEBBIE ANDERSON,

    Defendants.

**ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE**

Miller, J.

This matter is before me on a recommendation of Magistrate Judge Boyd N. Boland, issued March 3, 2008 (Docket No. 54) that a motion to dismiss filed by Defendants (Docket No. 20) be granted. Plaintiff filed a timely objection to the recommendation (Docket No. 61) and, therefore, is entitled to *de novo* review of the portions of the recommendation to which objection was made. 28 U.S.C. § 636(b); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988). I must construe Plaintiff's pleadings liberally and hold her to a "less stringent standard" because she is proceeding *pro se*. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972))). Having reviewed the pertinent portions of the record in this case, I find that the recommendation should be accepted for the following reasons.

PDF Final

Background

This action arises out of injuries Plaintiff sustained while working for the maintenance department at Capon Women's Correctional Facility ("CWCF") on December 29, 2005. The injuries were sustained while Plaintiff was under the supervision of Defendant Lieutenant Lee Newberry ("Lieutenant Newberry"). Allegedly Lieutenant Newberry told Plaintiff to climb into a "large steel-mesh cart" to retrieve the remaining two bags of trash at the bottom of the cart. While she was climbing into the cart, Lieutenant Newberry "pushed Plaintiff's left arm and jokingly said 'go on and get inthere [sic]" which caused Plaintiff fall headfirst into the cart. Plaintiff was knocked unconscious by the fall and suffered injuries to her head, neck, and spinal cord. Immediately after the fall, Plaintiff was pulled out of the cart by Lieutenant Newberry and Defendant Nurse Debbie Anderson ("Nurse Anderson") and taken to the medical office of the prison. Plaintiff alleges that she was given no medical examination, but was simply given a Motrin and an ice pack and sent back to her unit.

The following day, Nurse Anderson told Plaintiff to take the pain medication that was crushed in a cup of water. Plaintiff complied. After she had already swallowed the medication, Nurse Anderson told Plaintiff that the medicine would make her sleepy and possibly dizzy. When Plaintiff asked what she had taken, Nurse Anderson replied "Tylenol 3, they have codeine in them." After Plaintiff informed Nurse Anderson that she was allergic to codeine, Nurse Anderson responded "Oh, I didn't think to look at your chart." Plaintiff alleges that her chart clearly states her allergy to codeine at the top of her chart in large red letters. As a result of taking the codeine, Plaintiff suffered "several hours of projectile vomiting which caused severe pain to the Plaintiffs [sic] head

and neck."

On January 2, 2006, Plaintiff was taken to the CWCF medical office where her vitals were taken and she was fitted with a medical collar. Plaintiff was then transported by ambulance to St. Thomas Moore Hospital where a C.A.T. scan was administered. The C.A.T. scan revealed a "severe compression sprain in her neck and multiple muscle spasms in her back and shoulders." Plaintiff was given a muscle relaxer, prescribed Flexaril, and released back to the Department of Corrections. The CWCF medical office informed Plaintiff that they did not have Flexaril but would give her "something close to it."

On January 3, 2006, Plaintiff met with Dr. Bastista at the CWCF medical office. Dr. Bastista restricted Plaintiff to "very limited activities" including "no work, no stairs, no lifting, no bending, no stooping, etc." Plaintiff requested to be moved to a different correctional facility that could accommodate these restrictions but was not moved until September 11, 2006.

Finally, an M.R.I. was scheduled to be administered on Plaintiff on February 9, 2006 but was cancelled due to a facility lock-down. Plaintiff alleges that although the nursing staff requested an override, Plaintiff was unable to have an M.R.I. on that day. The rescheduled M.R.I. was performed at St. Mary Corwin on February 28, 2006. The M.R.I. showed damage to discs in the neck and continued muscle spasms in the back. Plaintiff visited a physical therapist on April 20, 2006 who gave her exercises to help with the pain but who also informed Plaintiff that her mobility difficulties were due to a brain injury. The physical therapist recommended a nuclear scan of Plaintiff's brain, but this recommendation was allegedly ignored by CWCF staff. On May 30, 2006, another

doctor at CWCF referred Plaintiff to a neurosurgeon who determined that Plaintiff does have a brain injury. The neurosurgeon referred Plaintiff to a neurologist and ordered physical therapy three times a week. Apparently, however, Plaintiff has been unable to have any physical therapy and has not met with a neurologist.

Plaintiff filed this lawsuit against Lieutenant Newberry and Nurse Anderson in March 2007 alleging that Defendants violated her constitutional rights by pushing her into the cart and, subsequently, not providing adequate medical care for the injuries she sustained. Claim One of Plaintiff's complaint is directed at Lieutenant Newberry and alleges that Lieutenant Newberry's failure to comply with the prison's administrative regulations that prohibit "horseplay" resulted in permanent disability to Plaintiff. Plaintiff's second claim is brought against Nurse Anderson and alleges that Nurse Anderson violated her Eighth Amendment rights when she (1) did not immobilize Plaintiff prior to lifting her from the cart; (2) waiting four days before giving Plaintiff any type of medical examination; (3) giving Plaintiff codeine even though her chart indicated that she was allergic to it; and (4) denying her medical access during a facility lock-down. Plaintiff seeks both monetary damages and prospective injunctive relief in the form of adequate medical treatment. Defendant filed a motion to dismiss (Docket No. 20) based on Eleventh Amendment immunity and failure to state claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), on June 28, 2007. Magistrate Judge Boland issued a recommendation on March 3, 2008 (Docket No. 54) and Plaintiff timely filed an objection on April 28, 2008 (Docket No. 61).

Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) alleges that the

complaint fails "to state a claim upon which relief can be granted."  A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff.  *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

## Discussion

First, Magistrate Judge Boland recommends that, pursuant to Eleventh Amendment immunity, Plaintiff's claims be dismissed to the extent that they are claims for money damages against Defendants in their official capacities. Plaintiff makes no objection to this recommendation.  As the Eleventh Amendment provides sovereign immunity for claims for money damages against officials in their official capacities, I agree with Magistrate Judge Boland that any such claims asserted by Plaintiff in this case should be dismissed.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (noting that the Eleventh Amendment bars suits for damages against state officials in their official capacities).

Magistrate Judge Boland also recommends that both of Plaintiff's claims be dismissed for failure to state a claim upon which relief can be granted.  First, with

respect to Plaintiff's claim against Lieutenant Newberry, Magistrate Judge Boland determined that Plaintiff failed to allege a constitutional violation sufficient to state a claim under 42 U.S.C. § 1983. *See Hill v. Ibarra*, 954 F.2d 1516, 1520 (10th Cir. 1992) ("To state a valid cause of action under 1983, a plaintiff must allege the deprivation by defendant of a right, privilege, or immunity secured by the constitution and laws of the United States while the defendant was acting under color of state law." (citations omitted)). Plaintiff did not specify a constitutional violation in her complaint, instead alleging only that Lieutenant Newberry failed to comply with the prison administrative regulations. However, "a failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183 (1984)). Liberally construing Plaintiff's complaint, Magistrate Judge Boland also determined that Plaintiff's allegations were insufficient to state a claim under the Eighth Amendment because Plaintiff's allegations demonstrated mere negligence. "[O]nly the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Indeed, the Tenth Circuit has determined that the "wanton infliction of pain" requires that the prison official "have intended to harm the inmate." *Sampley v. Ruettgers*, 704 F.2d 491, 495 (10th Cir. 1983); *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional

recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (citations omitted)).

Plaintiff objects to this recommendation arguing that Lieutenant Newberry's use of force involved the unnecessary infliction of pain as she suffered serious injury as a result of Lieutenant Newberry's actions. She argues that it is impossible to know whether Lieutenant Newberry intended to harm Plaintiff as there is "no way of reading Mr. Newberry's mind." This argument, however, is not sufficient to survive a 12(b)(6) motion to dismiss as factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1974. Furthermore, Plaintiff's complaint is directed at the inappropriate "horseplay" of Lieutenant Newberry and alleges that Lieutenant Newberry was "joking" as he pushed her left arm which ultimately caused her to fall into the cart. Given the requirements to state an Eighth Amendment excessive force claim, these allegations are insufficient to state a claim for relief that is "plausible on its face." *Id.*

Second, with respect to Plaintiff's claim against Nurse Anderson, Magistrate Judge Boland determined that Plaintiff's allegations again constituted only mere negligence and did not rise to the level of deliberate indifference. *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) ("[P]rison officials violate the Eighth Amendment if their 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.'" (citing *Estelle*, 429 U.S. at 104)); *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) ("'Deliberate indifference' involves both an objective and a subjective component. The objective component is met if the deprivation is sufficiently serious. A medical need is sufficiently serious if it is one that

has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." (internal quotations and citations omitted)). Magistrate Judge Boland determined that Nurse Anderson's actions when she pulled Plaintiff out of the cart without first immobilizing her and when she administered codeine to Plaintiff without first looking at Plaintiff's medical chart for allergy warnings were both mere negligence. Plaintiff did not allege that Nurse Anderson knew of and disregarded an excessive risk to Plaintiff when she engaged in these actions.

Magistrate Judge Boland also determined Plaintiff failed to allege a claim for an Eighth Amendment violation against Nurse Anderson with respect to the four-day delay in examining Plaintiff for her injuries or the nineteen-day delay in getting an M.R.I. because Plaintiff did not allege that these delays caused her substantial harm. *See Sealock*, 218 F.3d at 1210 ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." (citing *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993))). Magistrate Judge Boland also noted that Plaintiff's allegations demonstrate that she was provided with some degree of medical care on the day of the accident as the complaint states that Plaintiff was taken to the medical office by Nurse Anderson and given a Motrin and an ice pack for her neck immediately after the accident. Next, Magistrate Judge Boland determined that the allegations of delay in medical care or failure to allow her to see a physical therapist or neurologist as recommended by her neurosurgeon were mere differences of opinion between Plaintiff and the prison's medical staff, which is not

actionable. *See Roper v. Grayson*, 81 F.3d 124, 125 (10th Cir. 1996) ("'[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.'" (quoting *Ramos v. Lamm*, 639n F.2d 559, 575 (10th Cir. 1980))). Finally, Magistrate Judge Boland determined that Plaintiff's allegations concerning the delay in her transfer to another prison and her being housed upstairs even though she was on a "no stairs" restriction should be dismissed because Plaintiff has not alleged that either Lieutenant Newberry nor Nurse Anderson were personally involved in these decisions. *See Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." (citations omitted)).

Plaintiff objects to these determinations arguing first that she included the Colorado Department of Corrections in her complaint. Review of the complaint, however, shows that she did not include the Colorado Department of Corrections as a defendant—neither the caption nor the section entitled "Parties" lists the Colorado Department of Corrections. Therefore, I agree with Magistrate Judge Boland that any alleged constitutional violations that Lieutenant Newberry and Nurse Anderson were not personally involved in must be dismissed. Plaintiff also argues that dismissal is not appropriate because her lack of or delay in receiving medical treatment is not a difference of opinion between her and the prison's medical staff, but rather is the prison's medical staff ignoring orders from Plaintiff's neurosurgeon. Even assuming this is true for purposes of this motion, this does not affect Plaintiff's failure to allege that she suffered substantial harm as a result of the delay in medical treatment or appointments

with physicians. Plaintiff states only conclusory allegations that the delay or denial of appointments with a neurologist and physical therapist puts her "at a serious risk to long-term health problems." Conclusory allegations, however, are insufficient to survive a motion to dismiss. *Twombly*, 127 S.Ct. at 1974. Plaintiff's difference of opinion argument also does not remedy the fact that there are no allegations that Nurse Anderson personally participated in any decision to deny or delay medical treatment to Plaintiff beyond the medical examination immediately following the incident which I addressed above. Therefore, I conclude that Plaintiff's allegations concerning the delay in medical treatment, either immediately following the incident or during the course of her medical treatment, should be dismissed.

Accordingly, it is ordered:

1. The recommendation of Magistrate Judge Boyd N. Boland (Docket No. 54) is accepted.

2. Defendants' motion to dismiss (Docket No. 20) is granted.

3. This case is dismissed with prejudice.

DATED at Denver, Colorado, on July 3, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge